IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| GERALD H. LOWERY, SR., | * | |
| ADC #171920, | * | |
| | * | |
| Petitioner, | * | |
| v. | * | No. 4:22-cv-00391-JJV |
| | * | |
| DEXTER PAYNE, Director, | * | |
| Arkansas Division of Correction, | * | |
| | * | |
| Respondent. | * | |

**MEMORANDUM AND ORDER**

**I.    INTRODUCTION AND FACTUAL BACKGROUND**

Petitioner Gerald H. Lowery, Sr., an inmate at the Varner Unit of the Arkansas Division of Correction, brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus *pro se*. (Doc. No. 1.) Mr. Lowery was convicted by a jury in the Circuit Court of Miller County, Arkansas, of the rape and second-degree sexual assault of T.L. (Doc. No. 14-2 at 48-50.) He was sentenced to life imprisonment plus a consecutive term of twenty years. (*Id.*) His convictions were affirmed on appeal. *Lowery v. State*, 2019 Ark. 332, 586 S.W.3d 644.

The Arkansas Supreme Court summarized the relevant facts as follows:

> According to T.L.'s mother, Rhonda Lamb, she moved with [T.L.] to Texarkana, Arkansas, in 2004, when T.L. was six years old. Lamb and T.L. shared an apartment with Lowery and his girlfriend, Roshuanda Gant. Lamb, Gant, and Lowery worked for the Kirby vacuum-cleaner company, engaged in door-to-door selling. Lowery, who was a distributor, drove Lamb and Gant in a van to neighborhoods where they conducted sales calls. T.L. sometimes went with them, and she stayed in the van with Lowery.
>
> T.L. testified that on one occasion, Lowery asked her if she wanted to sit on his lap and pretend to drive. While sitting on her lap, Lowery touched her "vaginal parts" with his hand over her clothing. She stated that she could feel his penis becoming erect. T.L. testified that she became scared and began to cry. Lowery

>told her to stop crying, threatened her mother's life, and told T.L. not to tell her
>mother what had happened. Lowery also told T.L. to perform oral sex on him.
>On another occasion when T.L. was with Lowery in the van, T.L. needed to use the
>restroom. Lowery took her to a gas station. While she was in the restroom,
>Lowery entered and rubbed her vagina.
>
>> T.L. also described two incidents that occurred at the Texarkana apartment.
>> T.L. stated that she and Lowery's daughter were coloring on the living-room floor
>> when he put her on his lap. She felt him "grow an erection." Another time when
>> Lowery and T.L. were alone at the apartment, he called her into the living room
>> and began touching her vaginal area outside of her clothing. He then put her on
>> her knees between his legs and made her perform oral sex on him.

*Id*. at 1-2, 586 S.W.3d at 646.[1]

The jury also heard the testimony of Mr. Lowery's daughter, B.B., who was eleven years old at the time of trial and who stated that Mr. Lowery sexually assaulted her when she was five to seven years old. (Doc. No. 14-2 at 279-99.) Mr. Lowery objected to the admission of B.B.'s testimony on the basis that her allegations were the subject of another pending case, and he would be unduly prejudiced in that case by having to address B.B.'s allegations in this case. (*Id*. at 266-67.) The trial court found the probative value of B.B.'s testimony outweighed any prejudice. (*Id*. at 275-76.) The State chose not to present the testimony of Mr. Lowery's niece, M.N., who had been identified in a police report as one of Mr. Lowery's victims; upon being called as a witness for Mr. Lowery, she denied ever making such an allegation. (*Id*. at 256-65, 272-73, Doc. No. 14-3 at 85-97.) However, upon cross-examination of Mr. Lowery, the State was permitted to ask whether he was aware of the police report. (Doc. No. 14-3 at 166-67.) Over Mr. Lowery's objection, the trial court determined he could testify as to his knowledge of the report, despite M.N.'s denials as to its content. (*Id*.)

---

[1] As the state court explained, the offenses were alleged to have occurred in 2004 and 2005, when T.L. was six years old. *Lowery*, 2019 Ark. 332, at 1, 586 S.W.3d at 646. The record reflects that T.L. first reported the allegations in 2017, leading to the filing of charges in 2018. (Doc. No. 14-2 at 7.)

On appeal, Mr. Lowery argued the trial court erred by admitting B.B.'s testimony and by allowing the State to cross-examine him about the disputed police report. *Lowery*, 2019 Ark. 332, at 3-6, 586 S.W.3d at 647-48. The Arkansas Supreme Court rejected both arguments, holding that, while the trial court did err in allowing the State to inquire about the disputed police report, the error was harmless. *Id*. Mr. Lowery petitioned for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37, asserting ineffective assistance of counsel. (Doc. No. 14-8 at 13-21, 29-41.) The trial court dismissed the petition (*id*. at 42-49), and the Arkansas Supreme Court affirmed. *Lowery v. State*, 2021 Ark. 97, 621 S.W.3d 140.

In the Petition for Writ of Habeas Corpus now before the Court, Mr. Lowery raises two claims: (1) the trial court erred by admitting B.B.'s testimony when counsel representing him on those charges was not present and could not protect him from self-incrimination; and (2) the trial court erred by allowing the State to cross-examine him regarding his knowledge of the disputed police report.[2] (Doc. No. 1 at 8-9.) Respondent Dexter Payne, Director of the Arkansas Division of Correction, contends the claims are not cognizable in habeas and are procedurally defaulted. (Doc. No. 14 at 8-11.) After careful consideration of the Petition, Response, and Reply (Doc. No. 15), I find the Petition must be dismissed with prejudice.

## II.     ANALYSIS

### A.     B.B.'s Testimony

Mr. Lowery asserts the trial court erred in admitting B.B.'s testimony. (Doc. No. 1 at 8.) He notes her allegations were the subject of a then-pending case in Pulaski County Circuit Court that has since been *nolle prossed*. (*Id*.) According to Mr. Lowery, "[t]he Miller County Public

---

[2] Mr. Lowery's Petition raises two other claims, but he expressly abandons them in his Reply, conceding they were procedurally defaulted. (Doc. No. 1 at 5-7, Doc. No. 15 at 1.)

Defenders were unfamiliar with the Pulaski County case, and unable to adequately defend Petitioner against incrimination . . . effectively destroying all protections guaranteed in that case." (*Id.*)

Respondent insists this claim is not cognizable in habeas because it lacks any reference to or support in federal law. (Doc. No. 14 at 8.) A habeas corpus petition may be entertained "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Respondent interprets Mr. Lowery's claim to allege a violation of Arkansas Rule of Evidence 403, which allows for the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. A violation of Rule 403, taken alone, would not present a federal claim reviewable in habeas. *See Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994), *cert. denied*, 514 U.S. 1024 (citing *Cain v. Petrovsky*, 798 F.2d 1194, 1195 (8th Cir. 1986); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")).

A liberal reading of Mr. Lowery's Petition suggests he intends for the claim to be broader, presumably encompassing his Fifth Amendment right against self-incrimination. (Doc. No. 1 at 8.) But to the extent Mr. Lowery alleges a violation of his rights under the Fifth Amendment or any other federal law, the claim is procedurally defaulted. Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts and exhaust all available state remedies. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the

applicant has exhausted the remedies available in the courts of the State")).  The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981).  In order to fairly present a federal claim to the state courts, the petitioner must have referred to "'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts."  *Murphy*, 652 F.3d at 849.  Mr. Lowery did not do so here.  Both at trial and on appeal, he premised his argument on Rule 403 alone, giving the state courts no opportunity to correct any alleged violation of his federal rights.  (Doc. No. 14-4 at 58-59.)  As he has failed to comply with the fair-presentment requirement, his claim is procedurally defaulted.

When a state prisoner has defaulted his or her federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate:  (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Mr. Lowery does not allege he is actually innocent, nor could he cross the very high threshold of an actual-innocence gateway claim, which requires that a petitioner establish (1) new and reliable evidence that was not presented at trial, and

(2) in light of the new evidence, it is more likely than not that no reasonable juror would have convicted him. *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997). The cause-and-prejudice exception requires a showing of "some objective factor external to the defense" that impeded development of the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Mr. Lowery does not identify any such impediment. Assuming he blames his appellate counsel for limiting the claim to Rule 403 (Doc. No. 1 at 8), this factor is not one external to the defense. Accordingly, his claim regarding the admissibility of B.B.'s testimony is barred.

Finally, as part of this claim, Mr. Lowery makes a passing reference to the trial judge's supposed "prejudicial bias," displayed by his "allowing victim's family to sit with the prosecutor during trial" and acknowledging a spectator who happened to be B.B.'s aunt. (Doc. No. 1 at 8.) To the extent Mr. Lowery seeks relief based on these unsupported statements, they are procedurally defaulted and meritless.

### B.     Disputed Police Report

Mr. Lowery claims the trial court abused its discretion in allowing the State to ask him if he was aware of the police report that identified M.N. as one of his victims. (Doc. No. 1 at 9.) He argues this allowed the State to present to the jury "evidence of an inaccurate police report" that was ultimately given "substantial weight" at trial. (*Id.*)

Again, Respondent asserts this claim is not cognizable in habeas because it fails to allege any violation of the Constitution or other federal law. (Doc. No. 14 at 8-9.) Respondent is correct. At trial, Mr. Lowery objected to this line of questioning on the basis that it was not relevant. (Doc. No. 14-3 at 167.) He advanced the same argument on appeal. (Doc. No. 14-4 at 61-62.) The Arkansas Supreme Court, interpreting the Arkansas Rules of Evidence, determined the trial court erred in finding the testimony relevant but held the error was harmless

in light of the fact that the jury had already been apprised of the contents of the disputed police report. *Lowery*, 2019 Ark. 332, at 7-8, 586 S.W.3d at 649-50. This Court is in no position to upset that holding absent some violation of federal law. *King v. Kelley*, 797 F.3d 508, 512 (8th Cir. 2015) ("28 U.S.C. § 2254 does not permit us to exercise de novo review over a state court's interpretation of state law."); *see also Estelle*, 502 U.S. at 67 (federal habeas corpus relief does not lie for errors of state law). Mr. Lowery's assertion that the state court erred in interpreting state law is not a cognizable habeas claim.

### III.  CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). I find no issue on which Mr. Lowery has made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability will issue.

### IV.  CONCLUSION

IT IS, THEREFORE, ORDERED that:

1.   Mr. Lowery's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 1) is DISMISSED with prejudice.

2.   A certificate of appealability will not be issued.

SO ORDERED this 29th day of September 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE